UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellant,*

v.

WILEY GENE WILSON,
*Defendant-Appellee.*

No. 02-4530

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

WILEY GENE WILSON,
*Defendant-Appellant.*

No. 02-4581

Appeals from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Richard L. Williams, Senior District Judge, sitting by designation.
(CR-00-70)

Argued: June 4, 2003

Decided: July 28, 2003

Before NIEMEYER, GREGORY, and SHEDD, Circuit Judges.

_____

Reversed in part, affirmed in part, and remanded by unpublished per
curiam opinion.

_____

**COUNSEL**

**ARGUED:** Anne Margaret Hayes, Assistant United States Attorney, Raleigh, North Carolina, for Appellant. Joseph Edward Zeszotarski, Jr., POYNER & SPRUILL, L.L.P., Raleigh, North Carolina, for Appellee. **ON BRIEF:** Frank D. Whitney, United States Attorney, Raleigh, North Carolina, for Appellant.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Wiley Gene Wilson ("Wilson") was charged by superceding indictment with escaping from federal custody, in violation of 18 U.S.C. § 751(a). Wilson was convicted as charged at the conclusion of a jury trial. The government recommended that Wilson be sentenced as a "career offender" pursuant to § 4B1.1(a) of the Guidelines. The district court rejected this recommendation, and instead ruled that Wilson's instant conviction, the escape charge, was not a "crime of violence." The Government appeals. On cross-appeal, Wilson claims that the district court abused its discretion by refusing to allow him to introduce certain evidence during cross-examination of the Government's witnesses. For the reasons that follow, we affirm the district court's evidentiary ruling. However, the district court erred in concluding that Wilson was not a "career offender," and therefore, we reverse and remand for re-sentencing.

I.

In November 1998, while incarcerated in federal prison in Butner, North Carolina, Wiley Gene Wilson was transferred:

> from Butner to Nevada under the Interstate Agreement on Detainers Act for the limited purpose of permitting him to

respond to the state theft charges pending against him there. Prior to his transfer, Wilson signed an agreement in which he acknowledged that he was being temporarily transferred to state custody; that he was aware that state officials were not to release him into the community; that he would not receive credit for his federal sentence for any period of time he was in the community following an erroneous release by state officials; and that he would call the Bureau of Prisons immediately should he be released or transferred to anywhere other than to federal custody.

In December 1998, a month after Wilson was transferred from Butner to Nevada, the Nevada charges were resolved with the imposition of a sentence for time served. Instead of returning Wilson to the Bureau of Prisons, Nevada authorities released him into the community because of a mix-up in paperwork resulting from Nevada's prosecution of Wilson under an alias. Instead of notifying Nevada authorities of the mix-up or calling the Federal Bureau of Prisons, as he had agreed to do, Wilson fled to El Monte, California. He was found a few weeks later. . . .

*United States v. Wilson*, 262 F.3d 305, 309 (4th Cir. 2001)(*Wilson I*).[1]

Upon his recapture, Wilson was charged by indictment with escaping from federal custody, in violation of 18 U.S.C. § 751(a). At trial, Wilson's counsel first sought to cross-examine Sheila Mattingly, an inmate systems manager at the Butner facility, regarding the phone call that Wilson was required to make in the event that he was erroneously released. Wilson's trial counsel asked Ms. Mattingly, "[Y]ou testified in exhibit 12 that Mr. Wilson was under an obligation to make a collect person-to-person call to the inmate systems office upon his erroneous release. What I am asking you to do is to make that same call that he would have in your opinion been required to make at this time." At this point, the prosecution objected. The court sustained the objection on the grounds that the proposed demonstra-

---

[1]*Wilson I* resulted from Wilson's prior, unsuccessful allegation that he was the victim of a vindictive prosecution.

tion would be "hypothetical, theoretical," and not "probative of anything."

Defense counsel then proceeded to question Ms. Mattingly as to the time that Wilson was released from the Nevada prison. According to Mattingly's records, Wilson was released at approximately 3:00 A.M. Pacific Standard Time, which would have been 6:00 A.M. Eastern Standard Time. Defense counsel then asked Ms. Mattingly if she was normally in her office at 6:00 A.M. She responded, "No, I am not."

Later in the trial, defense counsel attempted to conduct the same demonstration with Ms. Terri Campbell, the senior legal instruments examiner at Butner. The court again denied counsel's request, and counsel proceeded to cross-examine Ms. Campbell as follows:

> Q: When one calls the number for the facility at Butner, you get a menu, recorded menu; is that correct?
>
> A: Yes, sir.
>
> Q: And it asks you to push various buttons. Depends on your choices of what you want to do?
>
> A: Yes, sir, I believe so.
>
> Q: So someone calling collect person-to-person would have to ask the operator to make those selections; is that correct?
>
> A: Yes, sir.

Shortly thereafter, the government rested. The defense did not offer any additional evidence, and the case was submitted to the jury. The jury returned a verdict of guilty.

At sentencing, the government argued that, for purposes of § 4B1.1(a), Wilson's conviction for felony escape was a conviction for a "crime of violence," and as a result, Wilson should be sentenced

as a "career offender."[2] Wilson objected to the government's proposed classification, and the district court sustained Wilson's objection. In its ruling, the court recognized that felony escape "when viewed in the abstract does qualify as a crime of violence," but reasoned that "where the specific facts of an offense are known, those facts control the determination of whether a conviction qualifies as a crime of violence for the career offender provision. . . . [I]t is not necessary to redetermine any facts [involving the instant case]."

After finding the categorical approach to be inapplicable, the court reviewed the specific facts of Wilson's instant conviction. The court noted, for example, that "the [Nevada state] authorities were apparently so anxious to get [Wilson] out of their system that they released him at 3:00 A.M. without funds, and left him to his own devices." Based in part on this evidence, the court concluded that "[t]here was nothing about the defendant's escape that presented a serious potential risk of physical injury to another."

The government filed this appeal, arguing that Wilson's felony escape should be sentenced as a "crime of violence." Wilson cross-appealed, contending that the district court erred in refusing to admit his telephone demonstration.

## II.

We review the district court's evidentiary rulings for abuse of discretion. *United States v. Hill*, 322 F.3d 301, 304 (4th Cir. 2003). In reviewing the district court's sentencing decision, "[i]f the issue turns primarily on a legal interpretation of the Guidelines, our review is *de novo*." *United States v. Nale*, 101 F.3d 1000, 1003 (4th Cir. 1996). *See also Hill*, 322 F.3d at 304.

---

[2]§ 4B1.1(a) states:

A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

### III.

The first issue before us is whether Wilson is entitled to a new trial because the district court declined to admit his proffered demonstrative evidence. To wit, defense counsel asked two of the Government's witnesses to call the Butner facility from the witness stand to prove that no live individual would have picked up the phone had Wilson called to report his erroneous discharge. Wilson argues that the demonstration would have proved that his call would have "fallen on deaf ears," viz. a pre-recorded and automated menu. Because Wilson would have had to call collect, person-to-person, defense counsel wished to argue that the call could not have gone through because no live person would have answered the phone to accept the charges. The purpose of the demonstration, therefore, was to contradict the testimony of the Government's witness, Ms. Terri Campbell, who testified that "[t]he phones are staffed . . .[, and] someone answers the phone at every minute of every day." The district court refused to allow the demonstration on the ground that it would be purely "hypothetical" and not "probative of anything."

There are several problems with Wilson's proffered evidence. Most notably, Wilson has not argued that he, his attorney, or anyone else has ever attempted to make the call to determine whether a live or recorded voice would answer the line. Furthermore, even if he could not have completed the call, there is no evidence that Wilson ever attempted to make the phone call, either at 3:00 A.M. on the date of his erroneous release from the Nevada prison system or at any other time thereafter. Accordingly, the district court correctly determined that the proposed demonstration was based on pure speculation.

In addition, even if we were to somehow conclude that the district court erred in prohibiting the demonstration, any such error would be harmless. *See Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986) ("improper denial of a defendant's opportunity to impeach a witness for bias" is subject to harmless-error analysis). Wilson was not convicted of felony failure to place a telephone call; he was found guilty of felony escape. Whether or not he tried to contact federal officials in Butner, North Carolina, other evidence amply supports the jury's verdict that, as charged in the indictment, Wilson "knowingly

escape[d] from [federal] custody. . . ." Accordingly, the district court's evidentiary ruling on the matter must be affirmed.

## IV.

### A.

The second issue presented to the Court is whether to apply a categorical approach to determine whether Wilson's instant offense qualifies as a "crime of violence" under § 4B1.1(a) of the Sentencing Guidelines. Wilson argues that the district court is not foreclosed from examining the facts known to it from trial in determining the nature of the offense. We disagree.

In *United States v. Dickerson*, 77 F.3d 774 (4th Cir. 1996), we applied the Sentencing Guidelines to determine whether the instant offense, that of felony attempted escape, constituted a crime of violence. In resolving this question affirmatively, we first asked whether "the conduct set forth (i.e. expressly charged) in the count of which [Dickerson] was convicted . . . by its nature, presented a serious potential risk of physical injury to another." 77 F.3d at 776 (alteration in original)(quoting USSG § 4B1.2, comment (n.2)). Because we were unable to ascertain the "nature" of the conduct from the charging indictment, we next considered whether the crime charged, "in the abstract," involved conduct representing a serious risk of violence. Wilson notes that in *Dickerson*, we did not expressly foreclose the possibility of examining facts made known to the court at trial. Indeed, such an inquiry would not have been possible in that case because the defendant had entered a guilty plea. From this observation, Wilson would invite the reviewing court to avail itself of its factual familiarity with the instant offense from trial to illuminate the sentencing determination. Although this approach might appear intuitively plausible, it is foreclosed by our precedent.

In *United States v. Martin*, 215 F.3d 470 (4th Cir. 2000), we applied the categorical approach to determine, *after trial*, whether the defendant's instant conviction for bank larceny constituted a "crime of violence." In reaching the conclusion that it was not such a crime, we declined the government's invitation to consider evidence established at trial that the defendant's conduct was violent in nature. Spe-

cifically, we noted, "[N]o matter how clear it may be from the record as a whole that Martin committed larceny from a person [the violent conduct established at trial], the limited nature of the permissible factual inquiry precludes our consideration of that fact in determining whether Martin's offense of bank larceny was a crime of violence." *Martin*, 215 F.3d at 474. Just as we declined to consider trial evidence of violence to enhance the sentence in *Martin*, we cannot now accept Wilson's invitation to search the record for mitigating evidence regarding the putatively non-violent nature of his escape. Instead, we limit our inquiry to a determination based upon the facts charged in the indictment, and, if necessary, the nature of the charged offense "in the abstract."

B.

The Guidelines define a "crime of violence" to include "any offense under federal or state law, punishable by imprisonment for a term exceeding one year that . . . presents a serious potential risk of physical injury to another." § 4B1.2(a)(2). As noted above, the commentary to § 4B1.2 clarifies that "offenses are included as 'crimes of violence' if . . . the conduct . . ., *by its nature*, present[s] a serious potential risk of physical injury to another." § 4B1.2 cmt. 1 (emphasis added).

Wilson was convicted of felony escape in violation of 18 U.S.C. § 751(a). Consistent with the directive above, we begin our analysis of whether this offense qualifies as a "crime of violence" by examining "those facts charged in the indictment." *Dickerson*, 77 F.3d at 776. Only if we cannot determine the factual quality of the charged offense from the indictment, does "the question for the sentencing court becomes whether that crime, *in the abstract*, involves conduct that presents a serious potential risk of physical injury to another." *Id.* (emphasis added).

The instant indictment charges only that Wilson "did knowingly escape from custody in the Federal Correctional Institution, Butner, North Carolina . . . ." Accordingly, we must determine whether escape, "in the abstract," is a "crime of violence." We have already resolved this question. In *Dickerson* we found that "the crime of felony attempted escape from custody, in violation of 18 U.S.C.

§ 751(a), involves conduct that presents a serious potential risk of physical injury to another." *Id.* at 777. The rationale supporting this conclusion is not difficult to divine: felony escape always entails a risk of harm to others because the crime always involves the possibility of violence. Even when a prisoner is erroneously released and permitted to "walk away," his recapture may not always be so pleasant. As the Tenth Circuit explained:

> [E]very escape scenario is a powder keg, which may or may not explode into violence and result in physical injury to someone at any given time, but which always has the serious *potential* to do so. . . . Indeed, even in a case where a defendant escapes from a jail by stealth and injures no one in the process, there is still a serious potential risk that injury will result when officers find the defendant and attempt to place him in custody.

*United States v. Gosling*, 39 F.3d 1140, 1142 (10th Cir. 1994) (emphasis in original). Accordingly, because his escape was a crime of a violent nature, the district court's refusal to sentence Wilson as a career offender was erroneous.

## V.

Because Wilson should have been sentenced as a "career offender," we remand to the district court for re-sentencing consistent with this decision.

*REVERSED IN PART, AFFIRMED IN PART, AND REMANDED*