COURT OF APPEALS OF VIRGINIA


Present:   Judges Frank, Kelsey and Powell
Argued at Chesapeake, Virginia


WILLIAM DAVID HARRISON
                                                          OPINION BY
v.      Record No. 0645-09-1                     JUDGE CLEO E. POWELL
                                                          JUNE 22, 2010
COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF ISLE OF WIGHT COUNTY
                     William C. Andrews, III, Judge Designate

              David B. Hargett (Hargett Law, PLC, on brief), for appellant.

              Erin M. Kulpa, Assistant Attorney General (Kenneth T. Cuccinelli,
              II, Attorney General, on brief), for appellee.


        William David Harrison ("Harrison") appeals his convictions for object sexual penetration,

rape, and abduction with intent to defile.  Harrison argues that the trial court erred when it

refused to allow him to present evidence of the victim's prior inconsistent statements.  Finding

that the error was harmless, we affirm.

                                      BACKGROUND

        On the night of June 15, 2007, the victim, a nine-year-old girl, was visiting the home of a

family friend with her seven-year-old sister and three of her brothers.  Also present were Michael

Baker ("Baker") and Harrison, whom the victim knew as "Monte."  At approximately

11:30 p.m., Baker, who the victim referred to as her stepfather, told the victim and her sister that

it was time for them to go home.  The two girls then left to walk home.

        In order to walk home, the girls had to take a path through a partially wooded area.  As

the girls walked along the path, the victim turned around and noticed Harrison following

approximately seven to eight feet behind them.  When the victim looked back again shortly

thereafter, she saw that Harrison was no longer behind them. Moments later, Harrison "jumped out of the woods" and told the victim's sister to "go home before he bust [sic] her upside her head." The victim's sister ran home.

Once alone with the victim, Harrison pushed her down, grabbed her wrists, and dragged her to an area behind a shed. When the victim screamed, Harrison punched her in the eye, telling her that if she screamed again, he would take her into the woods. Harrison took off the victim's shirt and shorts and then instructed her to remove her underwear. Harrison pulled down his pants and told the victim to lie down. Harrison then "got on top of" the victim and inserted his penis into her vagina.

Harrison then moved the victim to another location, behind a neighbor's house, where he forced the victim to place her shirt inside her mouth while he inserted his fingers into her vagina. He also put his penis inside her mouth.

At some point, the victim was able to escape from Harrison and ran naked with her shorts in her hand to her neighborhood, where she encountered several of her cousins and older brothers. The victim tearfully reported to them that "Monte rape[d]" her. Several witnesses saw the victim running naked that night, and several more witnesses heard the victim crying and saying that Harrison raped her.

The victim was taken to the hospital, where Sherlene Pregent ("Pregent"), a sexual assault nurse examiner, examined her. Pregent noticed that the victim had a swollen eye, scratches on her left inner thigh, and leaves and debris in her hair. Around the victim's external genital area, Pregent observed "a lot of swelling," blood clots, bruising, and several tears, including one she characterized as a "significant tear" that the medical team had considered suturing. In Pregent's opinion, the victim's injuries resulted from "very aggressive, forceful" penetration.

The next day, Deputy Sheriff James Pope of the Isle of Wight Sheriff's Office took the victim back to her neighborhood to retrace the path through the woods and the field where the attack occurred. As a result, Deputy Pope was able to recover the victim's shoes and underwear, a screwdriver, and a ball cap. The victim identified the ball cap as the one worn by Harrison when he attacked her. Forensic examination of the ball cap revealed blood stains from the victim on the inside of it.

Harrison was subsequently arrested and charged with object sexual penetration, rape, and abduction with intent to defile. Prior to trial, the Commonwealth's Attorney sent a letter to counsel for Harrison, disclosing that the victim had recently informed the Commonwealth that, during the attack, Harrison "touched but did not lick her chest in contrast to previous reports."

At trial, Pregent described her examination of the victim. As part of the examination, Pregent swabbed certain areas of the victim's body in an attempt to gather evidence. Specifically, Pregent swabbed the victim's vaginal area, belly button, left breast, legs, and lips. When asked why she swabbed the left breast, Pregent testified that she could not remember. Initially she said that it must have been because the victim told her that Harrison had either kissed or licked her left breast. Pregent then clarified, stating that

> [the victim] must have told me that something had happened to her left breast, but I honestly cannot document as what it was because . . . there are a lot of things that get said during the exam as we're doing it, and I honestly do not have documentation to that at all.

The victim then testified, describing the attack by Harrison. On cross-examination, the following exchange took place:

> [COUNSEL]: [D]id this person you say did these things to you, did he kiss your chest or what you might refer to as your titty?
>
> [VICTIM]: Yes.
>
> [COUNSEL]: You remember telling people that, right?

[VICTIM]:    Yes.

[COUNSEL]:  You remember telling the nurse that at the hospital, first of all, right?

[VICTIM]:    Yes.

*        *        *        *        *        *        *

[COUNSEL]:  Now, again, you remember recently talking to this nice prosecutor . . . fairly recently before trial, right?

[VICTIM]:    Yes.

[COUNSEL]:  But when you talked to him recently, you told him it didn't happen, didn't you?

[VICTIM]:    I don't remember.

In addition to the testimony of the victim and Pregent, the jury also heard testimony from the victim's sister. The victim's sister testified that Harrison followed them out of the friend's house, told her to go home, and threatened to "bust [her] in the back of [her] head" if she did not leave.

Additionally, the jury heard testimony from Earl Goodman ("Goodman"), an inmate housed with Harrison in jail after his arrest. According to Goodman, Harrison said that he was "drinking" and "high" when he accosted a "little girl that he knew" while they were "outside." In describing the crime to Goodman, Harrison said that one little girl ran away and he dragged the other and tried to "get his way with her." Harrison told Goodman that he removed the girl's clothes and "started messing with her." Goodman testified that Harrison had said he "couldn't do what he wanted to do because the little girl was fighting back."

After the Commonwealth had presented all of its evidence, Harrison sought to demonstrate the victim's prior inconsistent statement by either introducing the letter from the Commonwealth's Attorney into evidence or putting the Commonwealth's Attorney on the stand. The Commonwealth objected, stating:

- 4 -

> Judge, the answer to that is when he had [the victim] on cross-examination was to ask her did you make a prior inconsistent statement to [the Commonwealth's Attorney] on such and such a date wherein you said whatever the quote is. That would have been the appropriate time to try to introduce that evidence not now and certainly not by way of calling the prosecutor as a witness. I object to that.

In response, Harrison argued that he was not notified of the exact date that the victim had made the inconsistent statement. Harrison further argued that, because he put the victim on notice of the prior inconsistent statement and she denied making the statement to him, the evidence should come in. The trial court sustained the objection.

Harrison then presented witnesses on his behalf, including his daughter, his mother, and his estranged wife, in an attempt to establish that Harrison was elsewhere at the time of the attack. Harrison was subsequently found guilty on all counts and sentenced to life in prison plus eighty-five years.

Harrison appeals.

## ANALYSIS

Harrison argues that the trial court erred in refusing to allow him to present evidence regarding the victim's prior inconsistent statements. Specifically, Harrison contends that he should have been allowed to present evidence that the victim told a Commonwealth's Attorney that Harrison "touched but did not lick her chest," which was contrary to her testimony that he had kissed her chest. The Commonwealth concedes that the trial court erred in refusing to allow Harrison to present evidence of the victim's prior inconsistent statement; however, it argues that this was harmless error.

In light of the Commonwealth's concession, we will assume, without deciding, that the trial court erred in refusing to allow Harrison to present evidence of the victim's prior inconsistent statement.[1]

As an initial matter, we must determine whether the trial court's refusal amounts to constitutional error or non-constitutional error, as this determination necessarily affects our standard of review. See Pitt v. Commonwealth, 260 Va. 692, 695, 539 S.E.2d 77, 78 (2000) ("When a federal constitutional error is involved, a reversal is required unless the reviewing court determines that the error is harmless beyond a reasonable doubt."); Code § 8.01-678.

Harrison concedes that he failed to specifically raise the issue of constitutional error at the trial level. However, he argues that his objection to the trial court necessarily included the constitutional error argument, as the trial court's refusal to allow him to present impeachment evidence amounted to a violation of his Sixth Amendment right to confrontation. We disagree.

Not every ruling prohibiting the use of impeachment evidence invokes a constitutional principle. As Justice White noted in Davis v. Alaska, 415 U.S. 308, 321 (1974) (White, J., dissenting), some decisions are simply that "of a trial court exercising its discretion to control or limit cross-examination." The Supreme Court has held that "a criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness." Delaware v. Van Arsdall, 475 U.S. 673, 680 (1986). However, interpreting Van Arsdall, the Fourth Circuit Court of Appeals has stated that:

> The distinction between impeachment evidence proving bias and impeachment of general credibility is important because generally applicable evidentiary rules limit inquiry into specific instances of

---

[1] We note, however, that the issue of whether the victim's statement to the Commonwealth's Attorney was, in fact, a prior inconsistent statement is debatable, as the victim's statement that Harrison "touched but did not *lick* her chest," is not entirely inconsistent with her statement that he *kissed* her chest.

conduct through the use of extrinsic evidence *and through cross-examination with respect to general credibility attacks*, but no such limit applies to credibility attacks based on motive or bias.

Quinn v. Haynes, 234 F.3d 837, 845 (4th Cir. 2000) (emphasis added); see also United States v. Hill, 322 F.3d 301, 304 (4th Cir. 2003) ("[T]o prove that the exclusion of evidence was unconstitutional, the defendant must show that his evidence went directly to the issue of bias of the witness or motive of the witness to fabricate."); Thomas v. Commonwealth, 279 Va. 131, 154-55, 688 S.E.2d 220, 234 (2010) ("[W]ith respect to general conviction impeachment, not intertwined with an effort by the defendant to show bias of a witness in the particular case based upon the circumstances of pending juvenile proceedings, the Confrontation Clause does not require disclosure or admission of juvenile records . . . for impeachment of a witness on the subject of general credibility.").

Rule 5A:18 precludes this Court from considering a ruling of the trial court "as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling . . . ." Further, "[Rule 5A:18] applies to issues involving constitutional principles." West v. Commonwealth, 43 Va. App. 327, 337, 597 S.E.2d 274, 278 (2004). As we find that Harrison failed to raise the issue of constitutional error at the trial level, we will not consider it for the first time on appeal.

Thus, we are guided by Virginia's harmless error statute, Code § 8.01-678. Under Code § 8.01-678,

> When it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached, no judgment shall be arrested or reversed . . . [f]or any . . . defect, imperfection, or omission in the record, or for any other error committed on the trial.

In applying Code § 8.01-678 to criminal cases,

> it is implicit that, in order to determine whether there has been "a fair trial on the merits" and whether "substantial justice has been

reached," a reviewing court must decide whether the alleged error substantially influenced the jury. If it did not, the error is harmless.

Clay v. Commonwealth, 262 Va. 253, 259, 546 S.E.2d 728, 731 (2001) (citation omitted).

In Clay, our Supreme Court adopted the United States Supreme Court's test for non-constitutional error.

> "If, when all is said and done, the [reviewing Court] is sure that the error did not influence the jury, or had but slight effect, the verdict and the judgment should stand . . . . But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. . . . If so, or if one is left in grave doubt, the conviction cannot stand."

Id. at 260, 546 S.E.2d at 731-32 (quoting Kotteakos v. United States, 328 U.S. 750, 764-65 (1946)).

Applying this test to the present case, it is readily apparent that the error was harmless. Although the victim's testimony was the key to the Commonwealth's case against Harrison, the record clearly demonstrates that every aspect of her testimony was corroborated by other witnesses. Pregent's testimony regarding the extent of the victim's injuries established that an attack had, in fact, occurred. The testimony of the victim's sister corroborated the victim's testimony regarding the events leading up to the attack. Specifically, the sister corroborated that Harrison followed and accosted them, threatened the sister, and caused her to run away. Goodman's testimony further corroborated the victim's testimony regarding events that occurred during the actual attack. Harrison's statements to Goodman clearly corroborate the victim's testimony that it was Harrison who attacked her. Similarly, numerous witnesses testified to seeing the victim running naked, saying that Harrison had raped her, which corroborated the victim's testimony regarding what happened after the attack.

Furthermore, it is important to note that, in light of the charges brought against Harrison, the evidence that Harrison sought to have admitted contradicted a minor, non-material statement made by the victim. The statement did not relate directly to any elements of the crimes with which Harrison was charged, nor did it relate to the identity of the perpetrator. Thus, regardless of whether Harrison touched, kissed, or licked the victim's chest or breast, it would have no bearing on his convictions.

CONCLUSION

The evidence in the present case overwhelmingly supports Harrison's convictions. Thus, it is clear that the jury's verdict was not substantially affected by the exclusion of the victim's prior inconsistent statement. As the record demonstrates that Harrison "had a fair trial on the merits and substantial justice has been reached," as required under Code § 8.01-678, the judgment of the trial court is affirmed.

<u>Affirmed.</u>