COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Decker, Judges Petty and Huff
Argued at Richmond, Virginia

PUBLISHED

KEVIN LAMONT LAMBERT

v.        Record No. 0773-18-2

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE GLEN A. HUFF
OCTOBER 15, 2019

FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
Frederick G. Rockwell, III, Judge

C. David Sands, III (Winslow & McCurry, PLLC, on briefs) for
appellant.

Eugene Murphy, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.

Kevin L. Lambert ("appellant") appeals his convictions for two counts of possession of a

controlled substance with intent to distribute, one count of manufacture of a controlled

substance, one count of possession of a firearm while possessing a controlled substance with

intent to distribute, three counts of receiving money from prostitution, and three counts of sex

trafficking.[1]  After a jury trial, the Circuit Court of Chesterfield County imposed the jury's

recommended sentences totaling twenty-nine years' and twelve months' imprisonment.

Appellant raises three assignments of error.  First, he asserts that the trial court erred by

admitting evidence that he was a member of the gang known as the "Bloods."  Second, he claims

the trial court erred in limiting his cross-examination of a key prosecution witness, J.C., the

_____

[1] Appellant was indicted for three counts of sex trafficking through "force, intimidation, or deception" in violation of Code § 18.2-357.1(B).  The jury only convicted appellant of the lesser-included offences of sex trafficking in violation of Code § 18.2-357.1(A).  The jury also hung on an additional charge of enticement or procurement of human trafficking.

woman he allegedly forced into prostitution.  Finally, he argues the evidence was insufficient to sustain his convictions because J.C.'s testimony was incredible and the police did not attempt to forensically corroborate her story.

This Court disagrees.  First, appellant's communication to J.C. that he was in the Bloods gang was relevant and probative on the issue of intimidation in the sex trafficking charges.  Second, evidence that J.C. had previously engaged in prostitution was irrelevant.  Moreover, evidence she had previously engaged in dealing drugs had minimal probative value yet significant potential for confusion and undue prejudice.  Thus, the trial court did not abuse its discretion in excluding it.  Third, J.C.'s testimony was not so contrary to human experience that it was inherently incredible and forensic corroboration was not required.

## I.  BACKGROUND

"This Court considers 'the evidence presented at trial in the light most favorable to the Commonwealth, the prevailing party below.'"  Hawkins v. Commonwealth, 64 Va. App. 650, 652 (2015) (quoting Bolden v. Commonwealth, 275 Va. 144, 148 (2008)).  So viewed the evidence is as follows:

J.C. was convicted of heroin possession in 2015, and testified at trial she was still struggling with heroin addiction.  She met appellant in January of 2016.  She had no funds, and he offered to let her stay in his hotel room.  He supplied her with drugs for several days.  He then sent her to have sex for money.  J.C. complied, and when she returned, appellant collected the money.  He then provided her with more heroin.  Over several weeks—until appellant was arrested—appellant and J.C. moved among several hotels.

While J.C. was with appellant, he posted an ad for J.C.'s prostitution services on Backpage.com.  During those several weeks, appellant instructed J.C. to prostitute herself multiple times.  Each time she gave all the money to appellant, and appellant continued to supply

- 2 -

her with heroin. Although J.C. was unclear on precisely how many times overall she had prostituted herself at appellant's instruction, she specifically stated that on three separate days before appellant was arrested, she had sex for money with one to three men each day.

J.C. complied with appellant's instructions and never left or sought help because she was afraid of appellant, even though he never explicitly threatened her. She thought that he would beat or kill her if she crossed him, in part because appellant had told her he was a "general" in a gang, the Bloods. She did not know much about the Bloods but knew them to be violent and understood appellant to mean he had people under him who would do his bidding. He also told her that he had been in either prison or jail and, while imprisoned, threw hot water and baby oil on an individual, badly burning them. She also saw appellant carry a firearm throughout the day. Finally, one time when J.C. was sick and unable to engage in prostitution, appellant became angry and withheld drugs until she resumed prostitution.

While she was staying with appellant, J.C. also saw him and several other men attempt to make crack cocaine in the hotel room. She saw him selling both heroin and cocaine during her stay in his hotel room.

On February 12, 2016, J.C. and appellant were staying in Room 309 of a Super 8 motel. J.C. had rented the room in her name at appellant's direction and using funds he provided. Police began knocking on the door. Appellant hid the drugs while J.C. was "freaking out." He attempted to get her to take his firearm, but when she threw it on the bed, he retrieved it and hid it in the toilet.

Police watching the motel from the outside then observed a man "hanging outside of the third floor window by one arm being held by a female." When an officer arrived at the ground under the window, the man was gone. Nevertheless, people at a restaurant next door directed the officer toward appellant. Police then found appellant, but he denied being at the hotel. After

police arrested him on an outstanding warrant, the phone they retrieved from him received a text message, which displayed on the screen: "Just letting you know the police were knocking on your door." Appellant also had a room key card for the Super 8 motel and over six hundred dollars in cash.

When police returned to the room several minutes later to search it, they found J.C. just outside the room. She gave consent to search the room. The police found the firearm, loaded, in the back of the toilet, wrapped in a sock. Crack cocaine and heroin were hidden beneath an artificial plant in a pot on the television stand. Police also found marijuana, a digital scale, bullet cartridges, and a shoebox full of papers with handwritten copies of the "Blood's" history and rules. A second digital scale, identical to the one in the hotel room, was on the ground outside the window through which appellant had exited the hotel.

Appellant later admitted to police he had jumped out of the hotel room window, but claimed he fled because of the outstanding warrant.

At appellant's jury trial, in addition to J.C.'s testimony about appellant's gang involvement, the Commonwealth also offered—and the trial court admitted, over appellant's objection—expert testimony about gangs, including the Bloods. He explained that the Bloods in the Richmond area engaged in narcotics distribution, robberies, witness intimidation, and prostitution. He identified the documents found in the shoebox in the hotel room as a handwritten history of the Bloods which "Blood members are supposed to know" and "also the 31 rules, the gang rules." He also explained how the Bloods used intimidation and violence to keep their members in line.

Appellant sought to cross-examine J.C. about her drug dealing and prostitution before she met appellant. He proffered that she had engaged in both activities voluntarily before she met appellant. The trial court rejected appellant's proposed cross-examination.

At the conclusion of the trial, appellant moved to strike. The trial court denied the motion. The jury convicted appellant and recommended a total sentence of twenty nine years' and twelve months' imprisonment. The trial court imposed the jury's recommended sentence, and this appeal followed.

## II. ADMISSIBILITY OF EVIDENCE

### A. Standard of Review

This Court reviews "a circuit court's decision to admit or exclude evidence under an abuse of discretion standard and, on appeal, will not disturb a circuit court's decision to admit evidence absent a finding of abuse of that discretion." Herndon v. Commonwealth, 280 Va. 138, 143 (2010). "In evaluating whether a trial court abused its discretion, . . . '[this Court does] not substitute [its] judgment for that of the trial court. Rather, [this Court] consider[s] only whether the record fairly supports the trial court's action." Grattan v. Commonwealth, 278 Va. 602, 620 (2009) (quoting Beck v. Commonwealth, 253 Va. 373, 385 (1997)). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." Thomas v. Commonwealth, 44 Va. App. 741, 753, adopted on reh'g en banc, 45 Va. App. 811 (2005). Nevertheless, "a trial court 'by definition abuses its discretion when it makes an error of law.'" Auer v. Commonwealth, 46 Va. App. 637, 643 (2005) (quoting Shooltz v. Shooltz, 27 Va. App. 264, 271 (1998)).

### B. Admissibility of Gang Membership Evidence

In his first assignment of error, appellant argues the trial court erred by admitting evidence that appellant was a member of the Bloods gang. This Court rejects appellant's argument because appellant's membership in the Bloods gang and the fact that he communicated he was a "general" to J.C. was relevant to proving the intimidation element of the sex trafficking offenses.

Although evidence of gang membership is not *per se* evidence of prior bad conduct, this Court analyzes admissibility of gang membership "under the prior bad act standard" because "a juror might associate a defendant with such an affiliation as a person of bad character or someone prone to aggressive or violent behavior." Utz v. Commonwealth, 28 Va. App. 411, 420 (1998). Like all prior bad act evidence, evidence of gang membership is not admissible to prove that a defendant was more likely to be guilty because "he is a person of bad or criminal character." Id. (quoting Reynolds v. Commonwealth, 24 Va. App. 220, 223-24 (1997)). Nevertheless, if the evidence is relevant to some other issue in the case, such as "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, accident, or . . . a common scheme or plan" and "the legitimate probative value of such proof outweighs its incidental prejudice," the evidence is admissible. Va. R. Evid. 2:404(b). Moreover, the list of acceptable uses found in Rule of Evidence 2:404(b) is not exclusive. "Virginia law 'follows an "inclusionary approach" to the uncharged misconduct doctrine by admitting such evidence "if relevant, for any purpose other than to show a mere propensity or disposition on the part of the defendant to commit the crime."'" Castillo v. Commonwealth, 70 Va. App. 394, 415-16 (2019) (quoting Thomas, 44 Va. App. at 757 n.8).

Here, the Commonwealth sought to convict appellant of the Class 4 felony version of commercial sex trafficking. To do so it needed to prove appellant used "force, intimidation, or deception" in causing J.C. to engage in prostitution. Code § 18.2-357.1(B). J.C.'s testimony was directly relevant to prove that she was intimidated into prostitution because appellant told her he was a "general" in the Bloods. She testified that she feared him because of it, that she understood him to be saying that he had underlings in the organization who would do his bidding, and that he might beat her or have her killed if she didn't continue to prostitute herself at his demand.

- 6 -

Appellant not only challenges J.C.'s testimony, but also challenges the introduction of expert testimony about gang culture and the intimidation. J.C.'s testimony was relevant to establish that she felt intimidated. Under Code § 18.2-357.1, however, the Commonwealth needed to prove that appellant "use[d] . . . intimidation," not just that J.C. was intimidated. The expert explained how the documents found in the hotel room related to the gang and how intimidation works within the Bloods. The expert's testimony provided the necessary context to show that appellant knew that claiming to be a "general" in the Bloods would be intimidating— i.e., that he "use[d] . . . intimidation."

Appellant contends that the Commonwealth could have established the intimidation element in another way. He argues the Commonwealth could have asked J.C. about appellant's "behavior towards her and any statements he or anyone else made to her that caused her to fear leaving," instead of asking about appellant's membership in the Bloods. Setting aside that that is precisely what the Commonwealth was doing when it elicited J.C.'s testimony about appellant's gang membership, appellant does not get to dictate how the Commonwealth presents its case. "[A]n accused cannot, without stipulation of guilt, require the Commonwealth to pick and choose among its proofs, [and] to elect which to present and which to forego." Essex v. Commonwealth, 18 Va. App. 168, 172 (1994) (second alteration in original) (quoting Pittman v. Commonwealth, 17 Va. App. 33, 35 (1993)). "Furthermore, the Commonwealth was not obliged to have faith that the jury would be satisfied with any particular one or more of the items of proof. Therefore, it was entitled to utilize its entire arsenal." Pittman, 17 Va. App. at 35-36. This is especially true here where the jury did not believe he used force and only convicted him of the lesser-included offense of commercial sex trafficking without using "force, intimidation, or deception."

Appellant further contends that even if the evidence of appellant's gang membership were admissible under an exception to the prior bad act doctrine, it was nevertheless inadmissible because the unfair prejudice to appellant outweighed the probative value of the evidence. Although there may have been some prejudice inherent in permitting the Commonwealth to introduce evidence of appellant's membership in the Bloods, the "balancing of probative value against incidental prejudice . . . is committed to the sound discretion of the trial judge and will not be overturned on appeal absent an abuse of discretion." Lafon v. Commonwealth, 17 Va. App. 411, 418 (1993). Here, the evidence was directly relevant to an essential element of the offense charged. Moreover, the trial court gave a cautionary instruction, that we presume to have been followed by the jury. Jones v. Commonwealth, 50 Va. App. 437, 451 (2007). Therefore, the trial court did not commit an abuse of discretion in admitting the evidence appellant was in the Bloods.

### C. Admissibility of Impeachment Evidence

Appellant argues the trial court erred in limiting his cross-examination of J.C. about prostitution and drug dealing she may have engaged in before meeting appellant.[2] Because the proposed subjects of cross-examination were cumulative, minimally relevant, and likely to confuse the jury, this Court affirms the limitations on cross-examination.

---

[2] Although both parties discuss the admissibility of extrinsic evidence to prove J.C. engaged in this behavior before meeting appellant, appellant only assigned error to the limitation of cross-examination. Therefore, this Court limits its examination of the issue to only the cross-examination of J.C. See Carroll v. Commonwealth, 280 Va. 641, 649 (2010) (holding that the Court will not consider issues not included in the assignment of error); Kirby v. Commonwealth, 264 Va. 440, 444-45 (2002) ("The purpose of assignments of error is to point out the errors with reasonable certainty in order to direct this court and opposing counsel to the points on which appellant intends to ask a reversal of the judgment . . . ." (quoting Yeatts v. Murray, 249 Va. 285, 290 (1995))); Whitt v. Commonwealth, 61 Va. App. 637, 648 (2013) ("An assignment of errors is in the nature of a pleading, and in the court of last resort it performs the same office as a declaration or complaint in a court of original jurisdiction." (quoting First Nat'l Bank v. William R. Trigg Co., 106 Va. 327, 341 (1907))).

### 1. J.C.'s earlier drug dealing

Appellant claims the trial court should have permitted him to cross-examine J.C. about her alleged drug dealing before meeting appellant and how she hid her drugs in plants like some of the drugs found in the hotel room were hidden. He claims that because J.C. was in the hotel room when police arrived, her history of drug dealing gave her a motive to falsely accuse appellant of dealing drugs. In other words, because she had a history of dealing drugs, she needed to throw suspicion off herself, lest the police charge her with dealing drugs.

"An accused has a right to cross-examine prosecution witnesses to show bias or motivation and that right, when not abused, is absolute. The right emanates from the constitutional right to confront one's accusers." Brown v. Commonwealth, 246 Va. 460, 464 (1993). "The Confrontation Clause, however, does not grant a defendant an unlimited right to cross-examination. Indeed, the Supreme Court has held that 'trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination.'" James v. Commonwealth, 254 Va. 95, 98 (1997) (quoting Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986)). Thus, "[a]lthough this right is broadly applied, it may not be employed as a device to confuse the issues before the jury or to imply the existence of evidence that the jury is not permitted to consider." Lewis v. Commonwealth, 269 Va. 209, 214 (2005). "[T]o prove that the exclusion of evidence was unconstitutional, the defendant must show that his evidence went directly to the issue of bias of the witness or motive of the witness to fabricate." Harrison v. Commonwealth, 56 Va. App. 382, 389 (2010) (quoting United States v. Hill, 322 F.3d 301, 304 (4th Cir. 2003)).

Although not cited by appellant, Banks v. Commonwealth, 16 Va. App. 959, 964 (1993), provides the best support for appellant's argument. In it, this Court held the trial court erred in excluding evidence in a drug dealing case that the Commonwealth's key witness, an undercover

police officer, had himself sold drugs during his time undercover. This Court noted that "[e]vidence of a crime or other act related to the offense is distinguishable from 'independent crimes unconnected with the offense for which the defendant [is] being tried.'" Id. at 963 (quoting Adams v. Commonwealth, 201 Va. 321, 326 (1959)). This Court concluded that the undercover officer's alleged sale of drugs would have been a motive to falsely accuse the defendant "to distract the police from suspecting that he was, in fact, distributing drugs, to persuade the police that he was not doing so, or to gain immunity from them for his own misdeeds." Id. at 964.

Here, appellant argues that J.C. had a motive to falsely accuse appellant lest she be charged with possession of the firearm and drugs found in the hotel room. He alleges that her earlier drug dealing was evidence of that motive. J.C.'s alleged earlier drug dealing may have given her at least some reason to fear prosecution when found near the drugs in the hotel room, and thus, motive to falsely accuse appellant. Nevertheless, one key difference separates this case from Banks. In Banks, the witness was an undercover police officer. Other than the alleged drug dealing, he had no reason to fabricate. Here, the jury already knew that J.C. was convicted of felony possession of heroin, that she was a heroin addict, that she still had a suspended sentence hanging over her head, and that she, by her own admission, had been in the hotel room with the drugs. Thus, although J.C.'s earlier drug dealing has some probative value, that probative value is far less than in Banks where the excluded evidence of a motive to fabricate was the only evidence of a motive to fabricate.

"While the 'bias of a witness is always a relevant subject of inquiry when confined to ascertaining previous relationship, feeling and conduct of the witness,' a trial court nonetheless 'has discretion to limit the scope of cross-examination which is for the purpose of establishing bias.'" Jin v. Commonwealth, 67 Va. App. 294, 309 (2017) (quoting Norfolk & W. Ry. v.

Sonney, 236 Va. 482, 488 (1988)). Even if evidence is otherwise admissible, it may be excluded if the danger for unfair prejudice or the likelihood of confusion for the jury substantially outweighs the evidence's probative value. Va. R. Evid. 2:403.

> Some of the factors which may be considered in determining whether the evidence is unduly prejudicial and the trial court abused its discretion in judging the balance in favor of admission include whether the content of the statements tends to "arouse the jury's hostility or sympathy for one side without regard to the probative value of the evidence," and whether it tends to confuse or mislead the trier of fact, or distract it to irrelevant considerations.

Clay v. Commonwealth, 33 Va. App. 96, 107-08 (2000) (quoting McCormick on Evidence § 180 (John W. Strong, ed., 4th ed. 1992)), aff'd, 262 Va. 253 (2001).

Here, the excluded evidence was marginally relevant, and the danger that the evidence would confuse the jury was high. Appellant sought to introduce evidence that J.C. had previously engaged in drug dealing to prove that she was doing so in this instance and needed to lie to throw the blame on appellant. That is the core of what is prohibited by Rule of Evidence 2:404. Although the defendant's right to cross-examine a witness may trump Rule 2:404 in the abstract, the danger of unfair prejudice remains high when admitting prior bad act evidence to prove that an individual acted in a similar fashion at a later time. Moreover, evidence that J.C. had dealt drugs in the past could "arouse the jury's hostility" against her, potentially confusing the issues properly pending at trial. Finally, evidence was already introduced that suggested J.C. had involvement with drugs and a motive to fabricate her testimony. She was an admitted heroin addict and was subject to a suspended sentence. Given the minimal additional probative value in proving she previously had dealt drugs and the considerable danger of unfair prejudice, this Court cannot conclude the trial court abused its discretion when preventing appellant from cross-examining J.C. about prior drug dealing. Turner v. Commonwealth, 65 Va. App. 312, 327

(2015) ("Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." (quoting Grattan, 278 Va. at 620)).

## 2. J.C.'s earlier prostitution

Appellant also claims the trial court should have permitted him to cross-examine J.C. about whether she had engaged in prostitution before meeting appellant.[3] This Court disagrees. J.C.'s earlier prostitution is minimally relevant to whether appellant used intimidation to induce J.C. to engage in prostitution and would likely confuse the jury.

To prove appellant engaged in commercial sex trafficking under Code § 18.2-357.1(B), the Commonwealth needed to prove appellant used "force, intimidation, or deception" to cause J.C. to engage in prostitution. Appellant contends J.C.'s history of prostitution before meeting appellant was relevant to disproving this element of the offense. Central to appellant's argument is the idea that if J.C. voluntarily engaged in prostitution before meeting appellant, then appellant couldn't have intimidated J.C. into engaging in prostitution.

Appellant's argument is flawed. Appellant's argument assumes that once a woman voluntarily engages in a single commercial sex act, every later commercial sex act is also voluntary. The purpose of Code § 18.2-357.1(B) is to prevent an individual from being forced, intimidated, or deceived into engaging in commercial sex acts. Thus, whether J.C. had engaged in prostitution before is not the issue. Rather the question is whether appellant caused her, through intimidation, to engage in the commercial sex acts at issue. Cf. United States v. Lockhart, 844 F.3d 501, 510 (5th Cir. 2016) ("[E]vidence of the victims' pre- and post-indictment acts of prostitution would be irrelevant to this case as it does not 'make . . . more

---

[3] Appellant devotes a significant portion of his brief to arguing that Code § 18.2-67.7, the Rape Shield Statute, does not exclude evidence of J.C.'s earlier prostitution. The trial court did not base its ruling on the Rape Shield Statute and the Commonwealth does not argue before this Court that the statute applies, therefore this Court assumes without deciding that it does not apply and need not consider appellant's argument on that point.

or less probable' the fact that Appellants caused their victims to engage in a commercial sex act during the time period alleged in the indictment."); see also United States v. Maynes, 880 F.3d 110, 115-16 (4th Cir. 2018) (affirming the exclusion of sex trafficking victims' history of prostitution before meeting their trafficker and collecting cases from the First, Second, Seventh, and Eight Circuits doing the same).[4]

Moreover, even assuming that an individual who has once voluntarily engaged in a commercial sex act would be more willing to again engage in a commercial sex act voluntarily, the potential for confusion to the jury substantially outweighs the evidence's probative value. Va. R. Evid. 2:403. Introducing evidence of prior commercial sexual activity could confuse the jury into thinking that the Commonwealth needed to prove that appellant caused J.C. to engage in commercial sexual activity for the first time. Given the limited probative value of the evidence, the serious potential for confusion if the evidence were admitted, and the deference owed the trial court on evidentiary matters, this Court concludes that the trial court did not abuse its discretion in preventing appellant from cross-examining J.C. about her prostitution before meeting appellant.

### III. SUFFICIENCY OF THE EVIDENCE

#### A. Standard of Review

"When the sufficiency of the evidence to support a conviction is challenged, it is [the appellate court's] duty to view the evidence in the light most favorable to the Commonwealth and to uphold the conviction unless it is plainly wrong or without evidence to support it." Case v. Commonwealth, 63 Va. App. 14, 22 (2014) (quoting Powers v. Commonwealth, 211 Va. 386,

---

[4] According to some scholars, many trafficking victims have engaged in prostitution before they are trafficked. Stephen C. Parker & Jonathan T. Skrmetti, Pimps Down: A Prosecutorial Perspective on Domestic Sex Trafficking, 43 U. Mem. L. Rev. 1013, 1022-23 (2013) ("[I]t is not uncommon for victims of sex trafficking to have engaged in . . . commercial sex acts prior to their exploitation and enslavement at the hands of traffickers.").

388 (1970)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" Chavez v. Commonwealth, 69 Va. App. 149, 161 (2018) (quoting Banks v. Commonwealth, 67 Va. App. 273, 288 (2017)). "[T]he question is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Lawlor v. Commonwealth, 285 Va. 187, 223-24 (2013).

B.  Analysis

In his final assignment of error, appellant contends the evidence was insufficient to support his conviction because J.C. was not credible without forensic corroboration. He argues that because J.C. was alone in the hotel room for a few moments after appellant jumped out the third story window, she had the opportunity to destroy any evidence connecting her to the drugs. He argues her testimony is incredible in light of the fact that police did not check for fingerprints or DNA nor did they examine the contents of the computer found to see if the contents of the computer identified the owners of the drugs. Nevertheless, both at the trial court and in this Court, appellant implicitly concedes that if J.C.'s testimony is credible, the evidence is sufficient to support his convictions.

"The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Elliott v. Commonwealth, 277 Va. 457, 462 (2009). This Court gives "deference to the fact finder who, having seen and heard the witnesses, assesses their credibility and weighs their testimony." Id. Thus, this Court must accept "the trial court's determination of the credibility of witness testimony unless, 'as a matter of law, the testimony is inherently incredible.'" Nobrega v. Commonwealth, 271 Va. 508, 518 (2006) (quoting Walker v. Commonwealth, 258 Va. 54, 70-71 (1999)). "To be 'incredible,' testimony 'must be either so manifestly false that reasonable

- 14 -

men ought not to believe it, or it must be shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ.'" Juniper v. Commonwealth, 271 Va. 362, 415 (2006) (quoting Cardwell v. Commonwealth, 209 Va. 412, 414 (1968)).  In other words, this Court cannot say a witness' testimony is inherently incredible unless it is "so contrary to human experience as to render it unworthy of belief."  Johnson v. Commonwealth, 58 Va. App. 303, 315 (2011) (quoting Robertson v. Commonwealth, 12 Va. App. 854, 858 (1991)).

Here, appellant points to nothing in the record that falsifies J.C.'s testimony.  Rather, he addresses alleged deficiencies in the police investigation and corroboration of her testimony.  Mere deficiencies in the police investigation, although relevant to the factfinder when weighing the evidence, do not make a witness' testimony so "contrary to human experience" to be unbelievable.  Moreover, appellant essentially concedes that—if J.C. were credible—her testimony is sufficient to support his convictions.  Nevertheless, even if corroboration were required, appellant's jumping from a third story window, in order to flee his drug-laden room, corroborated J.C.'s testimony that appellant knew of and possessed the drugs in the hotel room.  He admitted to police he jumped out of the window of the hotel room where the drugs were found to avoid the police who had arrived at the hotel room door.  See Leonard v. Commonwealth, 39 Va. App. 134, 149 (2002) ("Indeed, 'it is today universally conceded that the fact of an accused's flight, escape from custody, resistance to arrest, concealment, assumption of a false name, and related conduct, are admissible as evidence of consciousness of guilt, and thus of guilt itself.'" (quoting Langhorne v. Commonwealth, 13 Va. App. 97, 101 (1991))).  When coupled with appellant's confession to jumping out the hotel room window, J.C.'s testimony is not so contrary to human experience to be unworthy of belief.  Therefore, the evidence is sufficient to support appellant's convictions, and this Court affirms.

IV.  CONCLUSION

As to appellant's first assignment of error, evidence of appellant's membership in the Bloods gang was relevant to establishing his use of intimidation to coerce J.C. into commercial sexual transactions.  The trial court did not err in admitting it.

As to appellant's second assignment of error, the trial court did not abuse its discretion in limiting cross-examination of J.C. about having dealt drugs before meeting appellant because the probative value of that cross-examination was substantially outweighed by the undue prejudicial effect.  Likewise, the trial court did not abuse its discretion in preventing appellant from cross-examining J.C. about having engaged in prostitution before meeting appellant because that evidence was irrelevant.

For appellant's final assignment of error, this Court rejects appellant's argument because J.C.'s credibility was an issue for the jury.  Her testimony was not so far outside normal human experience to render it incredible.  Moreover, appellant provided powerful confirmation he was involved in the sale of the drugs when he jumped out of a third story window, which he admitted to police.  For the foregoing reasons, this Court affirms.

<u>Affirmed.</u>