COURT OF APPEALS OF VIRGINIA

Present: Judges Ortiz, Friedman and White

TIMOTHY PRESTON MEADOWS

MEMORANDUM OPINION[*] BY
v.      Record No. 0868-23-3      JUDGE FRANK K. FRIEDMAN
AUGUST 6, 2024

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
J. Christopher Clemens, Judge

(John S. Koehler; The Law Office of James Steele, PLLC, on briefs),
for appellant.

(Jason S. Miyares, Attorney General; John Beamer, Assistant
Attorney General, on brief), for appellee.


A jury convicted Timothy Preston Meadows of a single count of unlawful wounding of

Steven Lee Jones in violation of Code § 18.2-51. On appeal, Meadows challenges the circuit

court's decision to bar the testimony of Barry Meadows—Meadows' father ("Barry"). Meadows

argues on appeal that his father should have been permitted to testify about statements Jones made

at a separate trial, but Meadows failed to proffer the content of his father's testimony in the

proceedings below. We conclude that the trial court did not abuse its discretion when it excluded

the victim's alleged inconsistent statements. Accordingly, we affirm.[1]

_____

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] After examining the briefs and record, the panel unanimously holds that oral argument
is unnecessary because "the appeal is wholly without merit." *See* Code § 17.1-403(ii)(a); Rule
5A:27(a).

BACKGROUND[2]

*Meadows shoots Jones*

Meadows owned a building that he leased to an automobile body shop. Jones was a mechanic and painter who did occasional jobs at the shop. After the shop's owner passed away, Jones went to the shop to retrieve property he kept there. Meadows and Barry were cleaning the shop at the time. Jones told Meadows that he was there to retrieve a spray bottle, primer, and a degreaser bottle that he owned. Meadows informed Jones that he could not remove anything from the shop. Jones showed Meadows proof on his cell phone that he owned the items, yet Meadows still would not allow Jones to remove anything. Meadows testified that he did not let Jones remove any items from the shop because everything needed to be documented by the deceased shop owner's attorney.

Jones agreed not to remove the equipment but told Meadows that he planned to take a truck the shop's prior owner agreed Jones could have. Jones retrieved the truck keys from the back of the building and tried to leave, but Meadows blocked his path. Meadows grabbed Jones' neck when Jones tried to get past him. Jones escaped Meadows' grasp and pushed him away. Barry tried to grab Jones; Jones pushed Barry into the side of a car and ran away.

As Jones was running away and jumping over some chairs, he "heard a pow" and felt his back get "real wet." He fell, got back up, and then ran across the street. When he looked back toward the shop, he saw Meadows standing in the doorway "looking for [him] with the gun." Jones called 911 and ultimately received treatment for two gunshot wounds at the hospital. One of the

---

[2] We recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

bullets caused entry and exit wounds in Jones' upper-right back and just below his right armpit. The trauma surgeon could not determine which wound was the entry wound and which was the exit. The second bullet entered Jones' right buttock and lodged near the skin on his right hip.

When the police arrived at the body shop, Meadows told them that he had shot Jones after Jones became aggressive and that the firearm was on the desk in the shop's office. The police recovered a .380 caliber firearm in the office, a bullet in the parking lot, and two .380 caliber cartridge cases on the floor inside the shop. Both the bullet found in the parking lot and the bullet recovered from Jones' body were fired from Meadows' firearm, as were the cartridge casings.

*The trial*

At the trial, on cross-examination, Meadows asked Jones if he remembered testifying at an earlier trial at which Barry was charged with assault and battery. The Commonwealth objected, stating the question was irrelevant. After an unrecorded sidebar, the court instructed the jurors to ignore the question.[3]

Barry testified on his son's behalf. When defense counsel asked him about the earlier trial, the Commonwealth again objected. Meadows argued that Barry could testify about Jones' testimony at the earlier trial because it conflicted with Jones' testimony at the instant trial. The court excluded the evidence. The court explained that the parties could discuss a specific question but could not "go on a fishing expedition." After another unrecorded sidebar, Meadows moved on to a different line of questioning.

Meadows and Barry each testified that Jones was the initial aggressor and had knocked Meadows down before throwing Barry against a car. Meadows testified that Jones said that he had

---

[3] The record is unclear whether there was a ruling made on the objection. Meadows does not assign error and even if he had it is well established that "when a party fails to obtain a ruling on a matter presented to a trial court, there is 'no ruling [for this Court] to review on appeal.'" *Bethea v. Commonwealth*, 68 Va. App. 487, 498 (2018) (alteration in original) (quoting *Schwartz v. Commonwealth*, 41 Va. App. 61, 71(2003)).

"something in [his] vehicle to handle" them, and Barry testified that Jones told them, "I've got something for you mother fuckers out in the truck." There was a firearm on the floorboard of the truck to which Jones had the keys. Meadows admitted that he shot Jones twice as Jones jumped over some chairs.

The jury found Meadows guilty of unlawful wounding, in violation of Code § 18.2-51.[4] The trial court sentenced Meadows to five years imprisonment with five years suspended.

ANALYSIS

On appeal, Meadows argues that there was no need to specifically proffer his father's testimony about the prior trial because that testimony was intended only to impeach Jones' testimony. We disagree.

"It is well-settled that '[d]ecisions regarding the admissibility of evidence "lie within the trial court's sound discretion and will not be disturbed on appeal absent an abuse of discretion."'" *Nottingham v. Commonwealth*, 73 Va. App. 221, 231 (2021) (alteration in original) (quoting *Blankenship v. Commonwealth*, 69 Va. App. 692, 697 (2019)). "A court has abused its discretion if its decision was affected by an error of law or was one with which no reasonable jurist could agree." *Tomlin v. Commonwealth*, 74 Va. App. 392, 409 (2022) (citing *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009)); *Jones v. Commonwealth*, 71 Va. App. 70, 86 (2019)).

"When an appellant claims a trial court abused its discretion in excluding evidence, we cannot competently determine error—much less reversible error—without 'a proper showing of what that testimony would have been.'" *Tynes v. Commonwealth*, 49 Va. App. 17, 21 (2006) (quoting *Holles v. Sunrise Terrace, Inc.*, 257 Va. 131, 135 (1999)). "Such a proffer allows us to

---

[4] The jury acquitted Meadows of malicious wounding and use of a firearm in the course of malicious wounding.

- 4 -

examine both the 'admissibility of the proposed testimony,' and whether, even if admissible, its exclusion 'prejudiced' the proffering party." *Id.* (quoting *Molina v. Commonwealth*, 47 Va. App. 338, 368 (2006)). "[E]ven when 'we are not totally in the dark concerning the nature of the evidence,' we still must 'know enough about the specifics' to be able to 'say with assurance' that the lower court committed prejudicial error." *Id.* (quoting *Smith v. Hylton*, 14 Va. App. 354, 358 (1992)).

Meadows relies on *Edwards v. Commonwealth*, 19 Va. App. 568, 570-71 (1995), where we held that the trial court erred by requiring the defendant to provide a transcript documenting the witness' prior inconsistent statement before allowing cross-examination about that statement. In *Edwards*, the defense attorney asked a witness who had identified the defendant if the witness remembered testifying at an earlier hearing that he "never saw who cut" him. *Id.* at 570. Thus, unlike in this case, the defendant specifically identified the prior inconsistent statement. Put another way, the problem here is not that Meadows failed to provide a transcript of Jones' testimony at Barry's trial. The problem is that Meadows never proffered Jones' testimony in any form.

For us to determine whether the testimony's exclusion prejudiced Meadows, we first need to know how and to what extent Jones' prior statements were inconsistent. *See Harrison v. Commonwealth*, 56 Va. App. 382, 390 (2010) (holding that any error in excluding the victim's prior inconsistent statements was harmless in part because the evidence impeached "a minor, non-material statement made by the victim"). Meadows' mere assertion that Jones provided prior inconsistent statements is not sufficiently specific to allow us to "'say with assurance that the lower court committed prejudicial error.'" *Tynes*, 49 Va. App. at 21 (quoting *Hylton*, 14 Va. App. at 358). Even on appeal, Meadows still failed to identify any specific inconsistent statement and in the absence of the alleged inconsistency, we cannot discern error in the trial court's evidentiary ruling.

## CONCLUSION

We affirm the trial court's judgment.

*Affirmed.*