PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

DONN L. HILL, JR.,
*Defendant-Appellant.*

No. 01-4083

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

DONN L. HILL, JR.,
*Defendant-Appellant.*

No. 01-4288

Appeals from the United States District Court
for the District of Maryland, at Greenbelt.
Alexander Williams, Jr., District Judge.
(CR-00-182-AW)

Argued: September 26, 2002

Decided: March 12, 2003

Before MOTZ, TRAXLER, and GREGORY, Circuit Judges.

---

Affirmed by published opinion. Judge Gregory wrote the majority opinion, in which Judge Motz joined. Judge Traxler wrote a concurring opinion.

**COUNSEL**

**ARGUED:** Eric Robert Delinsky, Assistant Federal Public Defender, Baltimore, Maryland, for Appellant. David Ira Salem, Assistant United States Attorney, Greenbelt, Maryland, for Appellee. **ON BRIEF:** James Wyda, Federal Public Defender, Martin G. Bahl, Staff Attorney, Baltimore, Maryland, for Appellant. Thomas M. DiBiagio, United States Attorney, Greenbelt, Maryland, for Appellee.

**OPINION**

GREGORY, Circuit Judge:

Donn L. Hill, Jr. was convicted of posing as an investment advisor and defrauding Michael Emmanuel out of more than $100,000 in cash, stocks, and annuities. Hill insists that the assets were delivered to him as gifts. He further contends that Emmanuel recharacterized the gifts as investments only after their personal relationship soured. Hill principally appeals the district court's exclusion of evidence that Emmanuel made a gift of $10,000 to another man, Suman Shrestha, and later sued Shrestha, claiming the money was a loan. Finding no error, we affirm.

I.

On October 18, 2000, Donn L. Hill, Jr. was charged in a six-count superceding indictment, which included three counts of wire fraud, two counts of money laundering, and one count of mail fraud. Hill was accused of misrepresenting himself as a financial advisor of two investment firms, Shardon International, and the Manus Group. Hill convinced Michael Emmanuel, a retired history professor, to invest virtually all of his savings with these two firms. Between July 1997 and December 1998, Hill took over Emmanuel's investment portfolio valued at approximately $82,000, as well as an annuity worth $25,000. He transferred the funds into accounts that only he controlled, and that were not kept in Emmanuel's name. Hill then used the money to pay off his credit card bills, make rent payments, and cover other personal debts. Following a four-day jury trial, Hill was

found guilty of two counts of wire fraud and two counts of money laundering. He was acquitted of the remaining two counts.

Hill's defense was that he had a personal relationship with Emmanuel, and that the $107,000 was a gift. He contends that Emmanuel relabeled the gifts as investments only after their personal relationship dissolved. In support of this defense, Hill sought to introduce evidence of an allegedly similar situation. The evidence consisted largely of two documents: a "gift letter" and a civil complaint filed in the district court of Maryland for Montgomery County. The gift letter read, "I, Michael Emmanuel, . . . do hereby certify that I have given/will give a gift of $10,000 to . . . Suman Shrestha." The lawsuit, filed by Emmanuel against Shrestha, sought repayment of a "personal loan" of $15,000, which had been advanced in two installments, one for $5,000 and another for $10,000. In addition to these documents, the defendant sought to cross-examine Emmanuel about the documents, and introduce the testimony of Mr. Shrestha.

At trial, the government filed a motion to exclude this evidence. Hill contended that it went to Emmanuel's motive to fabricate the charges. The district court ruled in favor of the government, reasoning:

> To bring in another incident that, in my judgment, is dissimilar and hasn't been proven to be similar would have the effect of confusing the jury. . . .

> And the jury, in my mind, should not be given testimony of some prior incident involving a dispute between Mr. Emmanuel and some other guy that has no connection with this case at all. . . . . We're speculating and assuming that the reason for the termination of the relationship [between Shreshta and Emmanuel] and the ultimate suit was similar to what we had here, and that's not what this case is about. . . .

On appeal, Hill argues that this ruling was one of four reversible errors. Hill also challenges the district court's decisions to: (1) permit the introduction of relevant evidence that was obtained as part of a search that unlawfully exceeded the scope of the warrant; (2) permit

the introduction of misstatements made by the defendant about the Manus Group; and (3) apply the "vulnerable victim" and "abuse of position of trust" enhancements, U.S.S.G. §§ 3A1.1, 3B1.3, in calculating Hill's sentence.

## II.

This Court reviews evidentiary rulings for abuse of discretion. *United States v. Weaver*, 282 F.3d 302, 313 (4th Cir. 2002); *United States v. Turner*, 198 F.3d 425, 429 (4th Cir. 1999). In reviewing a district court's denial of a Fourth Amendment motion to suppress, this Court "reviews questions of law *de novo* and findings of fact and reasonable inferences drawn from those findings for clear error." *United States v. Yang*, 286 F.3d 940, 944 (7th Cir. 2002); *Ornelas v. United States*, 517 U.S. 690, 699 (1996). This Court will overturn a trial court's factual determinations regarding the sentencing guidelines only for clear error. *United States v. Nale*, 101 F.3d 1000, 1003 (4th Cir. 1996).

## III.

### A.

Hill first challenges the district court's decision to exclude evidence of the victim's prior relationship with Suman Shreshta. He contends that the exclusion of the evidence violated his Sixth Amendment right to confront the government's witnesses against him. In the alternative, he insists that the evidence was admissible under the Federal Rules of Evidence, and that its exclusion affected his substantial rights. We find, however, that the district court properly applied the Federal Rules of Evidence, and that there is no error, constitutional or otherwise.

In considering the Confrontation Clause as it relates to impeachment evidence, the Supreme Court has held that a defendant presents a constitutional violation "by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the facts from which jurors . . . could

appropriately draw inferences relating to the reliability of the witness.'" *Delaware v. Van Arsdall*, 475 U.S. 673, 680 (1986) (quoting *Davis v. Alaska*, 415 U.S. 308, 318 (1974)). Interpreting *Van Arsdall*, the Fourth Circuit has explained:

> The distinction between impeachment evidence proving bias and impeachment of general credibility is important because generally applicable evidentiary rules limit inquiry into specific instances of conduct through the use of extrinsic evidence and through cross-examination with respect to general credibility attacks, but no such limit applies to credibility attacks based on motive or bias.

*Quinn v. Haynes*, 234 F.3d 837, 845 (4th Cir. 2000). Thus, to prove that the exclusion of the evidence was unconstitutional, the defendant must show that his evidence went directly to the issue of bias of the witness, or motive of the witness to fabricate.

Hill suggests that the evidence of the Shrestha transaction goes to Emmanuel's motive to fabricate. He surmises that if Emmanuel invented a story about a $10,000 loan, then he might also fabricate another story about a $100,000 investment.* In support of his Sixth Amendment argument, Hill cites to the Seventh Circuit case of *Redmond v. Kingston*, 240 F.3d 590 (7th Cir. 2001). In *Redmond*, a defendant charged with statutory rape wished to introduce evidence that, eleven months before his alleged crime, the victim had fabricated a story that she had been forcibly raped, leading "her mother, a nurse, and the police on a wild goose chase for a rapist merely to get her mother's attention. . . ." *Id.* at 591-92. The court reversed the district court, finding that the exclusion of this impeachment evidence infringed the defendant's "constitutional right of confrontation." 240 F.3d at 592. Hill argues that he, like the defendant in *Redmond*, is

---

*At trial, Hill hinted at a scorned lover defense, suggesting that he and Emmanuel might have had a romantic relationship. The trial court, however, excluded this evidence, ruling, "[B]oth of you have been dancing around some issues about relationships that at this point I don't believe are really that relevant." Hill does not appeal that ruling. Thus, if he contemplated a scorned lover defense in the past, Hill has now abandoned that litigation strategy.

entitled to present impeachment evidence of his supposed victim's prior "fabrication."

Hill's evidence is not as specific, clear, compelling or relevant as the *Redmond* evidence. In *Redmond*, the government conceded that the victim had fabricated the earlier event. In Hill's case there is a serious dispute as to the meaning of the Shrestha transaction. Hill insists that Emmanuel gave $10,000 to Shreshta voluntarily and then maliciously recharacterized the gift as a loan. The government, however, does not concede that Emmanuel fabricated anything in his lawsuit against Shrestha. On the contrary, the government insists that the Shrestha incident is evidence of a previous incident of fraud — perhaps a fraud committed by friends of Hill's. The government notes that Hill's girlfriend and partner in Shardon International was Sharmila Shrestha, who shares an unusual last name with the alleged donee, Suman Shrestha. The government also observes, "The alleged [Shrestha] gift letter was dated in 1994 . . . at a time when Emmanuel was suffering the effects of the stroke that disabled him in 1981. Like the documents drafted by Hill in the instant case, the documents in the Shrestha 'incident' were completely typed except for Emmanuel's signature." (Br. of Appellee, at 19.) Furthermore, unlike the prosecution in *Redmond*, the government in the present case has buttressed its case with substantial documentary evidence of the fraudulent transactions. Thus, any probative value that the Shrestha incident might have is greatly diminished. *See Redmond*, 240 F.3d at 592. In short, viewing the Shrestha evidence in its proper context, it is clear that the incident is, at most, peripheral to the question of Emmanuel's credibility. Thus, Hill's Sixth Amendment right to confront the witnesses against him is not implicated by its exclusion.

Aside from his constitutionality claim, Hill argues that he was entitled to introduce the evidence under Rule 404(b) (Character Evidence — Other Crimes, Wrongs, or Acts), or alternatively, under Rule 608(b) (Character Evidence — Specific Instances of Conduct). Assuming *arguendo* that evidence of the Shrestha incident would be admissible under either rule, it still might be properly excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." Fed. R. Evid. 403. A district court's ruling applying the Federal Rules of

Evidence is reviewed for abuse of discretion, and will be upheld so long as it is not "arbitrary or irrational." *Weaver*, 282 F.3d at 313.

As explained above, there is no concrete evidence as to what happened with the Shrestha transaction. The government and Hill vehemently dispute the meaning of the gift letter and the Maryland civil lawsuit. As a result, the district court exercised its discretion by excluding this evidence pursuant to Rule 403. To have admitted these documents would have necessitated an exhaustive case within a case that would have confused the jury as to the issues to be decided. At the very least, the jury would have had to: (1) determine what happened between Emmanuel and Shrestha; (2) consider whether the Shrestha event bore any similarity to Emmanuel's relationship with Hill; and finally, (3) decide whether any similarity would make Emmanuel's testimony less credible as it pertained to Hill. In rejecting Hill's invitation to go down this path, the district court acted rationally and reasonably.

Furthermore, even if it could be proven that Hill did lie with regard to the Shrestha case, that would not necessarily make the exclusion of the evidence reversible error. "[O]ne episode of lying does not bear on [the victim's] credibility at [the defendant's] trial so clearly that it would be an abuse of discretion for the district court to exclude reference to it." *United States v. Piche*, 981 F.2d 706, 714 (4th Cir. 1992). Accordingly, the district court's evidentiary rulings on this question are affirmed.

### B.

The defendant makes two other assignments of error related to the admission of evidence, both of which are without merit. First, Hill contends that the district court erred in permitting the introduction of relevant evidence obtained during a partially unlawful search. Hill correctly notes that special agents searching his home seized documents that were later determined to be outside the scope of the search warrant. The defendant argues that because some of the seized evidence was beyond the scope of the warrant, any lawfully obtained evidence must also be excluded. This Circuit has ruled, "In extreme circumstances even properly seized evidence may be excluded when the officers executing the warrant exhibit a 'flagrant disregard for its

terms.' The general rule, however, is that items properly seized may still be admitted even when they are obtained at the same time as improperly seized items." *United States v. Ruhe*, 191 F.3d 376, 383 (4th Cir. 1999).

In the present case, the search warrant was limited to "all file folders" and "all documents" "that are identifiable with the Manus Group, aka The Manus Foundation, Shardon International and/or Donn L. Hill and which contain, among other things, the documents listed below. . . ." That is, the search was generally limited to items related to Mr. Hill's businesses. The special agents, in searching the defendant's home, seized documents such as a program guide for the Washington, D.C. Stage Guild and instructions for Mr. Hill's voice mail system. These documents, along with several other items, were later determined to be outside the scope of the search warrant.

At the time, however, it was plausible for the agents to view these items as within the scope of the search. For example, the agents might have suspected that Hill entertained perspective clients at the theater and then billed his theater expenses to his firms. As such, the program guide could have been viewed as "identifiable with the Manus Group, aka The Manus Foundation, Shardon International and/or Donn L. Hill. . . ." Similarly, Hill might have saved voice mail messages related to his businesses, or forwarded messages to another number. As such, the agents might infer that the voice mail instructions would be within the scope of the search warrant. In sum, the agents' violations of the warrant were not so flagrant as to require the exclusion of the lawfully seized evidence.

Second, Hill argues that documents which "purported to contain statements made by Mr. Hill and the Manus Group, which the government used to attempt to show that Mr. Hill had made sharply conflicting statements about the volume of business done by the company" should have been excluded as irrelevant. Of course, the issue of Hill's businesses, and misleading statements he made about those businesses, were directly relevant to the government's case in chief. Thus, the evidence was properly admitted.

## C.

Hill's final challenge is to the district court's application of the sentencing guidelines. He challenges two upward adjustments made by

the district court at sentencing. First, Hill claims that he should not have received the "vulnerable victim" enhancement under U.S.S.G. § 3A1.1. Second, he insists that he should not have received an upward enhancement for "abuse of a position of trust" under U.S.S.G. § 3B1.3. For a sentencing enhancement to apply, the government must prove the facts underlying the enhancement by a preponderance of the evidence. In this case, the government met its burden as to both § 3A1.1 and § 3B1.3.

A defendant should receive a two-level enhancement if he "knew or should have known that a victim of the offense was a vulnerable victim." § 3A1.1(b)(1). A vulnerable victim is defined as one who "is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to criminal conduct." § 3A1.1, cmt. n.2. In this case, the evidence was that Emmanuel was in his mid-sixties, had suffered a stroke, and "lived like a hermit." J.A. at 113. There was more than enough evidence to support the district court's finding that § 3A1.1 applied.

A defendant is subject to a two-level increase in his offense level if his conviction involved the abuse of a "position of public or private trust." § 3B1.3. The evidence in this case is that Emmanuel sought and received investment advice from Hill. Hill managed several companies that he claimed were investment companies, and Emmanuel believed Hill to be involved in the business of "stocks." Thus, the district court properly applied the enhancement.

## IV.

For the foregoing reasons, the district court's orders are affirmed.

*AFFIRMED*

TRAXLER, Circuit Judge, concurring:

I concur with my colleagues as to the disposition of this case. I write separately, however, to add my thoughts on some of the issues raised in Section III.A. of the majority opinion concerning the exclusion of certain evidence at trial.

I.

Hill contends that evidence critical to his defense was excluded and that this exclusion unconstitutionally prevented him from mounting a full defense. In particular, he claims that testimony from Suman Shrestha, a witness with whom Emmanuel purportedly had a relationship, as well as a gift letter executed by Emmanuel on behalf of Shrestha, should have been admitted. First, Hill argues that the evidence was admissible to show Emmanuel's bias. Second, he argues the evidence was proper under Rule 404(b) because it tended to show Emmanuel's motive, intent, and plan to fabricate testimony concerning his dealings with Hill, as well as a lack of any motive or intent on Hill's part. Third, Hill argues that he should have been allowed to cross-examine Emmanuel about the Shrestha incident under Rule 608(b) because it was relevant to the issue of Emmanuel's truthfulness. Taken together, Hill contends that, because the court permitted no exploration of the Shrestha incident, he was deprived of the right to confront his accuser, in violation of the Sixth Amendment. For its part, the government argues that the Shrestha evidence was "reverse 404(b)" evidence that was properly excluded as mere "propensity evidence." J.A. 160-61. The government also argues that, even if the evidence was relevant (a point the government does not concede), the introduction of the evidence would have led to a trial within a trial, considerable confusion as to the issues before the jury, and harassment of the witness, and that the evidence was therefore excludable under Rule 403.

Each of these claims raises important issues. We review the district court's decision as to admissibility for abuse of discretion, which we will not find unless the decision was "arbitrary and irrational." *United States v. Weaver*, 282 F.3d 302, 313 (4th Cir.), *cert. denied*, 123 S.Ct. 186 (2002). Having reviewed the trial transcript, I ultimately agree that the court did not abuse its discretion in excluding the evidence and did not violate Hill's Sixth Amendment rights.

II.

Hill first argues that the court should have admitted the Shrestha evidence because it demonstrated Emmanuel's bias toward Hill. Hill's defense was that he and Emmanuel had a long-term personal relationship and that Emmanuel voluntarily gave Hill control over his

assets because of that relationship, and that Emmanuel changed his mind when the relationship ended poorly. This defense was not without some evidentiary support — the documentary evidence introduced by the government showed that the initial transactions giving rise to the charges against Hill bore Emmanuel's signature, authorizing Hill to act on Emmanuel's behalf. According to Hill, the Shrestha evidence supported his bias claim by showing that Emmanuel in the past had made a monetary gift to a friend, documented that gift, and then tried to recharacterize the gift as a loan once the relationship dissolved, as a way of punishing the friend for abandoning him. This kind of evidence, however, does not comport with a strict definition of bias. As the Supreme Court has noted, "[b]ias is a term used in the 'common law of evidence' to describe the relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party." *United States v. Abel*, 469 U.S. 45, 52 (1984). Although there might exist other evidence of a relationship between Hill (as a party) and Emmanuel (as witness), the evidence proffered by Hill had to do with Emmanuel's relationship with Shrestha, a third party who was not involved in the proceedings or in any of the events surrounding the dispute between Hill and Emmanuel. Therefore, Shrestha's testimony and the documentary evidence surrounding his dealings with Emmanuel is not properly characterized as evidence of Emmanuel's bias toward Hill. *See*, *e.g.*, *United States v. McNatt*, 931 F.2d 251, 256 (4th Cir. 1991) (holding that a document in which a police officer purported to admit fabricating evidence in another case was not admissible to show bias against the defendant where the document made no mention of the defendant and contained nothing to show evidence of a relationship between the officer and the defendant); *United States v. Greenwood*, 796 F.2d 49, 54-55 (4th Cir. 1986) (concluding that the district court did not improperly preclude cross-examination of a prosecution witness where the subject of the witness' testimony was not probative of the witness' animosity toward the defendant or favoritism toward the government and therefore not probative of bias).

The Shrestha evidence is more aptly considered under Rule 404(b), as evidence of Emmanuel's motive, intent, or plan, and the test for its admissibility therefore comes from *United States v. Queen*, 132 F.3d 991 (4th Cir. 1997). As a general proposition, evidence that tends to make the existence of a fact of consequence to an issue in the case

more probable or less probable than without the evidence is admissible, *id.* at 994; *see also* Fed. R. Evid. 401 and 402. Rule 404(b) recognizes the potentially probative value of evidence about prior "crimes, wrongs, or acts." Fed. R. Evid. 404(b). Although "not admissible to prove the character of a person in order to show action in conformity therewith," such evidence may be admissible when offered to show motive, opportunity, intent, and other similar purposes. *Id.* However, relevant evidence proffered under 404(b) can be excluded if its probative value is "substantially outweighed" by the potential for unfair prejudice, confusion of the issues, undue delay, or redundancy. Fed. R. Evid. 403.

In light of these general principles, we have determined that evidence is admissible under Rules 403 and 404(b) in the following circumstances:

> (1) The evidence must be relevant to an issue, such as an element of the offense, and must not be offered to establish the general character of the defendant. In this regard, the more similar the prior act is . . . to the act being proved, the more relevant it becomes. (2) The act must be necessary in the sense that it is probative of an essential claim or an element of the offense. (3) The evidence must be reliable. And (4) the evidence's probative value must not be substantially outweighed by confusion or unfair prejudice in the sense that it tends to subordinate reason to emotion in the factfinding process.

*Queen*, 132 F.3d at 997.

In its discretion, the district court here could have decided that the allegations and the circumstances surrounding the Shrestha incident and the instant case were too dissimilar and too contentious to warrant admission of the evidence. There were numerous differences between the incidents that would have likely led to confusion and a possible "trial within a trial." For example, the proffered Shrestha evidence concerned a civil suit filed by Emmanuel arising from a one-time gift that Emmanuel allegedly sought to recharacterize as a loan. By contrast, Hill represented himself to Emmanuel as a professional financial advisor and principal in two investment companies (which turned out

to be bogus), and he thereafter engaged in a series of transactions involving Emmanuel's investment portfolio. Unlike the Shrestha situation, it was the government, not Emmanuel, that pressed charges against Hill after a third party's review of Emmanuel's financial records revealed that Hill had emptied Emmanuel's accounts.

Besides these differences, as Judge Gregory points out, the government never conceded the reliability of any of the Shrestha evidence. Without a doubt, the court would have faced a contentious trial within a trial and the very real possibility of jury confusion by permitting litigation of the alleged Shrestha affair. For these reasons, I cannot conclude that the district court erred in deciding that the Shrestha incident and the present case were too dissimilar, that questions of reliability surrounded the proffer, or that considerable risk of confusion would have attended admission of the disputed evidence under Rule 404(b).

These same considerations answer Hill's argument that he should have been allowed to cross-examine Emmanuel concerning the Shrestha incident under Rule 608(b). This rule permits cross- examination of a witness as to specific instances of conduct in order to test his character for truthfulness. Presuming, without deciding, that the nature of the Shrestha evidence is indicative of untruthfulness, the language of the rule nevertheless places the decision whether to admit such evidence in the discretion of the trial judge:

> They [specific instances of the witness' conduct] may, however, *in the discretion of the court*, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness . . . concerning the witness' character for truthfulness or untruthfulness.

Fed. R. Evid. 608(b) (emphasis added). The considerations outlined in Rule 404(b) still apply in the context of Rule 608(b). As this court has stated, "[t]he purpose of [Rule 608(b)] is to prohibit things from getting too far afield—to prevent the proverbial trial within a trial." *United States v. Bynum*, 3 F.3d 769, 772 (4th Cir. 1993). Once again, the district court did not abuse its discretion in deciding not to permit this evidence before the jury.

The exclusion of any inquiry into the Shrestha evidence under 608(b) underscores that there are constitutional implications to the

district court's ruling. Because Hill's defense was that the transfers from Emmanuel's accounts were authorized and that Emmanuel lied about the transactions when the relationship soured, Hill argues that, in being prevented from any exploration of the Shrestha incident, he was prevented from offering highly relevant evidence in violation of his constitutional right to present a defense. *See*, *e.g.*, *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973) ("The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations."). In addition, Hill argues that the failure to allow him to cross-examine Emmanuel about the Shrestha issue violated his rights under the Confrontation Clause. *See*, *e.g.*, *Olden v. Kentucky*, 488 U.S. 227, 231 (1988) (explaining that a defendant's Sixth Amendment right to confront witnesses against him "includes the right to conduct reasonable cross-examination"); *Delaware v. Van Arsdall*, 475 U.S. 673, 680 (1986) ("[A] criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby to expose to the jury the facts from which jurors could appropriately draw inferences relating to the reliability of the witness." (internal quotation marks and alteration omitted)).

The references to "reasonable" or "appropriate" areas of cross-examination in *Olden* and *Van Arsdall* remind us that the Confrontation Clause does not "prevent[ ] a trial court from imposing any limits on the scope of defense counsel's cross-examination and presentation of evidence related to the impeachment of a key prosecution witness's credibility." *Quinn v. Haynes*, 234 F.3d 837, 847 (4th Cir.), *cert. denied*, 532 U.S. 1024 (2001). Rather, courts retain "wide latitude . . . to impose reasonable limits on such cross-examination based on concerns" such as confusion of the issues, lack of relevance, or potential harassment. *Id.* (internal quotation marks omitted). The question here is whether the court, in preventing Hill from *any* exploration of the Shrestha evidence, exceeded the scope of latitude enjoyed by trial courts in making such determinations. Once again, I find no error in the district court's decision that the Shrestha evidence was too far afield of the issues under consideration to shed any light on Emmanuel's alleged bias or motive and that considerable confusion and potential harassment would have attended its admission. At the same time,

Hill was permitted to directly challenge Emmanuel's testimony on cross-examination, including Emmanuel's obviously shaky memory as to the circumstances under which he granted authority to Hill to conduct his affairs, as well as numerous other aspects of his testimony. The court's refusal to allow Hill to explore allegations surrounding Emmanuel's dealings with Shrestha did not prevent Hill from reasonable and appropriate cross examination of Emmanuel concerning his dealings with Hill. Under these circumstances, I too believe Hill has not made a showing that his constitutional rights were violated.